# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-3857

———————

Richard Carraher, also known as    *
Tom Carraher,    *
   *
       Plaintiff - Appellant,    *
   *   Appeal from the United States
     v.    *   District Court for the
   *   District of Minnesota.
Target Corporation, a Minnesota    *
Corporation,    *
   *
   *
       Defendant - Appellee.    *

———————

Submitted: June 14, 2007
Filed: September 19, 2007

———————

Before MURPHY, BEAM, and SHEPHERD, Circuit Judges.

———————

SHEPHERD, Circuit Judge.

Richard "Tom" Carraher appeals from the entry of summary judgment on his age discrimination claim against Target Corporation. Carraher alleges that Target terminated his employment in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, and the Minnesota Human Rights Act (MHRA),

Minn. Stat. §§ 363A.01-.41. On appeal, Carraher contends that the district court[1] erred in its pretext analysis and did not view the evidence in the light most favorable to him. We affirm.

I.

Target hired Carraher, then 56 years old, as a recruiter in June 2003. In September 2003, Carraher became an executive recruiter for Target's southern region, which stretches from Texas to Florida. Carraher, however, worked in Minneapolis, Minnesota.

In August 2004, Dan Caspersen became Target's Vice President for Stores Human Resources. Caspersen sought to "decentralize" Target's executive recruiting by moving recruiters to the regions for which they were recruiting. As a result of the decentralization, Carraher's position was relocated to Texas, the region for which he primarily recruited. When Carraher's supervisor, Kim Strong, asked Carraher if he would be willing to relocate, Carraher informed her that he preferred to remain in Minneapolis and would seek another position with Target there.

After unsuccessfully seeking four different recruiting positions at Target's Minneapolis headquarters, Carraher e-mailed Strong on January 24, 2005, and informed her that he was interested in the possibility of relocating to Texas. On January 27, 2005, Carraher met with Strong to discuss the issue. According to Carraher, Strong presented him with only one option at that meeting: termination with severance. Strong asserts that they discussed three options: severance, the prospect of Carraher relocating to Texas, and a different recruiting position, located in Minneapolis, that Carraher had originally proposed.

---

[1] The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

On February 2, 2005, Carraher sent a letter to Todd Blackwell, Target's Executive Vice President for Human Resources, alleging that his impending termination was motivated by age bias. Carraher failed to return to work after February 4, 2005. On March 4, 2005, Target terminated his employment.

On October 11, 2005, Carraher filed suit alleging age discrimination in violation of the ADEA and the MHRA, and retaliation.[2] The district court granted summary judgment to Target on all Carraher's claims. Carraher appeals.

## II.

Carraher contends that the district court erred by confusing the two separate prongs of the pretext analysis, see Haas v. Kelly Servs., Inc., 409 F.3d 1030, 1035 (8th Cir. 2005) (discussing prongs), and by granting summary judgment to Target despite direct evidence that Target's proffered reason for his termination was false and circumstantial evidence that Target discriminated against him because of his age. Carraher further contends that the district court did not view the evidence in the light most favorable to him.

We review a district court's grant of summary judgment de novo. Wittenburg v. Am. Express Fin. Advisors, Inc., 464 F.3d 831, 836 (8th Cir. 2006), cert. denied, 127 S.Ct. 2936 (2007). Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). We must view the evidence, and the inferences that may be reasonably drawn from it, in

---

[2]Carraher abandons his retaliation claim on appeal by failing to brief the issue. See Fair v. Norris, 480 F.3d 865, 869 (8th Cir. 2007) (by failing to assert grounds for reversal of orders in his briefs, the appellant is deemed to have waived the issues on appeal).

the light most favorable to the nonmoving party.  Williams v. City of Carl Junction, Mo., 480 F.3d 871, 873 (8th Cir. 2007).

The ADEA and the MHRA both forbid an employer from taking adverse employment actions against an employee because of his age.  29 U.S.C. § 623(a)(1); Minn. Stat. § 363.03, subd. 2; see Chambers v. Metro. Prop. & Cas. Ins. Co., 351 F.3d 848, 855 (8th Cir. 2003) (age discrimination claims under the MHRA are analyzed in the same fashion as claims under the ADEA).  To establish a claim of intentional age discrimination, a plaintiff may present direct evidence of such discrimination or may prove his claim through circumstantial evidence. See Mayer v. Nextel W. Corp., 318 F.3d 803, 806 (8th Cir. 2003).  "[D]irect evidence is evidence 'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by  a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action."  Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004) (quoting Thomas v. First Nat'l Bank of Wynne, 111 F.3d 64, 66 (8th Cir. 1997)).  Where the plaintiff presents only circumstantial evidence of discrimination, as Carraher does in the instant case, we apply the familiar burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green.  See 411 U.S. 792, 800-04 (1973).[3]

_____

[3]With respect to the dissent's assertion that our "evidentiary analysis" is "imprecise" in light of Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), this court has expressly stated that Desert Palace has "*no* impact" on summary judgment analyses, Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004), and has consistently demonstrated this principle in age discrimination cases.  See McGinnis v. Union Pacific R.R., No. 06-3453, 2007 WL 2214432, at *2 (8th Cir. Aug. 3, 2007); Morgan v. A.G. Edwards & Sons, Inc., 486 F.3d 1034, 1042 (8th Cir. 2007); Thomas v. Corwin, 483 F.3d 516, 528 (8th Cir. 2007); Lewis v. St. Cloud State Univ., 467 F.3d 1133, 1136 (8th Cir. 2006); Jones v. United Parcel Serv., Inc., 461 F.3d 982, 991 (8th Cir. 2006), cert. denied, 127 S. Ct. 2088 (2007); Lee v. Rheem Mfg. Co., 432 F.3d 849, 852-53 (8th Cir. 2005).

Under McDonnell Douglas, the plaintiff must first establish a prima facie case of discrimination. In the instant case, Target concedes that Carraher has established a prima facie case with respect to the termination of his employment.[4]

Because Carraher has established a prima facie case, Target must articulate a legitimate non-discriminatory reason for Carraher's termination. See Haas, 409 F.3d at 1035. Target contends that it terminated Carraher in March 2005 after Carraher walked off the job in February and failed to return to work or otherwise inform his supervisor of his plans. Accordingly, Target has proffered a legitimate, non-discriminatory reason for Carraher's termination, and "the presumption of unlawful discrimination disappears . . . ." See Thomas v. Corwin, 483 F.3d 516, 529 (8th Cir. 2007).

The burden then falls to Carraher, who can avoid summary judgment if the evidence creates (1) a fact issue as to whether Target's proffered reason is pretextual and (2) a reasonable inference that age was a determinative factor in his termination. See Haas, 409 F.3d at 1035. In some cases, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000).

In an attempt to establish that Target's proffered reason for his termination is pretextual, Carraher provides contradictory explanations for his absence. In both his opposition to summary judgment and opening brief, Carraher contends that he was using accrued vacation during the month of February 2005 and that he planned to

---

[4]On appeal, Carraher does not allege that Target's decision to decentralize store recruiters, the catalyst for the elimination of his position in Minneapolis, or Target's failure to hire him for a different position in Minneapolis was the result of age discrimination.

return in March.[5]  In his reply brief, Carraher provides a second explanation:  he was absent because he "understood from the severance package that he was directed to stop working on site as of February 11 and terminated effective March 4."  In a further attempt to create a fact issue, Carraher presents a letter from Strong that, he contends, terminates him for rejecting the severance agreement.

Carraher abandoned his first explanation for his absence in the penultimate page of his reply brief after Target noted, without contradiction, that Strong did not give Carraher approval to use his vacation and that Carraher had not accrued enough vacation to take an entire month off.  As for Carraher's second explanation, he did not raise it before the district court in his opposition to summary judgment.  Accordingly, we will not consider it.  See Winthrop Res. Corp. v. Eaton Hydraulics, Inc., 361 F.3d 465, 469 (8th Cir. 2004) ("We review de novo only the evidence and arguments that were before the district court when it made its determination in the [summary judgment] order[] challenged on appeal.").  We do, however, note that this explanation does not account for Carraher's unexcused one-week absence between February 4, the last day he reported to work, and February 11.

Carraher's contention that he was terminated because he had not signed the severance agreement does not create a fact issue as to whether Target's proffered reason is pretextual because it is not supported by the evidence.  The letter by Strong to Carraher on March 2, 2005, does not give a reason for his termination; instead, it informs Carraher of the date when his salary and benefits will expire.  The letter informs Carraher that Target has kept him on the payroll "[a]s a result of the consideration period," but that because he has rejected the severance agreement, "your

---

[5]Carraher's opposition to summary judgment and opening brief contain these identical sentences, among others to their effect:  "Defendant declares that Plaintiff ceased working on February 4, implying that he walked off the job.  In fact, he was using his accrued vacation and planned to return in March."

last actual date on the payroll will be March 4, 2005." Thus, it is not inconsistent with Target's proffered reason.

Also, Carraher's contention that Strong withdrew two previously available options at the January 27 meeting does not explain how or why the withdrawal undermines the veracity of Target's proffered reason for Carraher's termination. Further, it is undisputed that Target first offered the recruiting job in Texas to Carraher and that he initially declined it because he preferred to stay in Minneapolis. Accordingly, Carraher has not created a fact issue as to whether Target's proffered reason is false, and he cannot carry his burden. See Reeves, 530 U.S. at 148; Haas, 409 F.3d at 1035. Although we may end our analysis here, we will address the second prong of the test.

As for the second prong, Carraher concedes he has no direct evidence that age was a determinative factor in Target's decision to terminate him; instead, he argues that Target's corporate culture fostered a preference for younger employees. As evidence of this preference, Carraher contends that (1) non-decision makers made age-based comments; (2) he was replaced by someone substantially younger; (3) the average age of recruiters declined after his termination; (4) Target increased its recruiting efforts on college campuses; and (5) Target deviated from its policy by not investigating Carraher's claim. Assuming these allegations are true, they are insufficient to create a reasonable inference that age was a determinative factor in Carraher's termination.

According to Carraher, "the three primary [age-based] statements at issue" are: (1) a September 2004 statement by Senior Diversity Representative Develle Turner that he had been at a meeting wherein a "top Target executive" defined employees who fit the "Target Brand" as persons who are "young and energetic"; (2) an April 2004 statement to Carraher by a human resources manager that, "We cannot discriminate on the basis of age, but we want someone with fire in the belly. Older,

more experienced candidates do not have fire in the belly"; (3) a September 2004 statement by a district manager who told Carraher that, after interviewing an individual in his mid-50's, "I felt like I was interviewing my dad. It felt bad. He should be retired."

Carraher concedes that the employees who made the age-based comments "were not explicitly involved in the decision to terminate him" and that their remarks should be viewed as "stray remarks." As we have previously stated,

> A plaintiff must establish "*some* causal relationship" to show "the significance of . . . statements made by persons other than the relevant decision-maker to the resolution of the ultimate issue of intentional discrimination." Therefore, we consider factors such as (1) whether the statements were made by employees who took part in the decision or influenced the decision to terminate the plaintiff; [and] (2) the time gap between when the statements were made and the date of termination . . . .

Wittenburg, 464 F.3d at 837 (quoting Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 779 (8th Cir. 1995)).

Carraher cannot establish any causal connection between the above statements and Carraher's termination. All three of the statements were made by non-decision makers and relate to the recruitment of others, and were thus made to Carraher in the context of his employment as an executive recruiter. Further, all are generalized statements that do not tend to establish that age was the basis for Carraher's termination. Finally, all of the comments were made more than five months prior to Carraher's termination.

Carraher's contentions regarding "the increased youthfulness of [Target's] recruiting" do not create a reasonable inference that age was a determinative factor in

his termination. Although Carraher was replaced by someone substantially younger than him, in this case 28 years younger, we have previously held that this fact, though necessary to establish a prima facie case, possesses "insufficient probative value to persuade a reasonable jury that [plaintiff] was discriminated against." Nelson v. J.C. Penney Co., Inc., 75 F.3d 343, 346 (8th Cir. 1996); see Thomas, 483 F.3d at 529 ("[Plaintiff] presents no evidence, other than her replacement by a younger woman, indicating [defendant's] proffered reasons for her termination were a pretext for age discrimination. For these reasons, the district court properly granted summary judgment to the defendants on [plaintiff's] age discrimination claim.").

Similarly, Carraher does not show how a small decline in the average age of recruiters or an increased emphasis on college recruiting creates a reasonable inference that age was a determinative factor in his termination. Carraher's contention that the decline in the average age of recruiters after his termination, from 38.5 to 35.09, based on the ages of the 11 recruiters employed on February 1, 2005, and the 22 recruiters employed on December 31, 2005, is based on speculation concerning statistically insignificant information. Carraher did not present any expert testimony to support his claims, and his sample size and pattern are too small to be statistically significant. See Bell v. Bolger, 708 F.2d 1312, 1320-21 (8th Cir. 1983) (finding plaintiff's statistics "inconclusive" where the sample size of 15 "was small and the differences in recommendation and selection rates were not that great"). Additionally, Carraher concedes that Target hired two recruiters over 40 during that period and hired him when he was 56 years old. As for Target's decision to recruit on college campuses, we have previously stated that recruitment of "recent college graduates is not evidence [that a company] discriminates against older workers." Grossmann v. Dillard Dep't Stores, 109 F.3d 457, 459 (8th Cir. 1997).

Finally, Carraher's contention that Target deviated from its policy by not investigating his claim is belied by the evidence. The evidence indicates that Carraher's letter to Target, alleging discrimination and threatening litigation, was

referred to Target's in-house counsel and investigated. We further note that, even if Target's policy required an investigation under these circumstances, Target could disregard its policy "as long as it does not unlawfully discriminate in doing so." See Haas, 409 F.3d at 1036 (quoting Mayer, 318 F.3d at 810). Because there is no evidence that Target did not follow its policy because of Carraher's age, its alleged failure to follow policy does not give rise to an inference of age discrimination. See id.

### III.

We affirm the district court's summary judgment order on Carraher's age-discrimination claim.

BEAM, Circuit Judge, concurring and dissenting.

I concur in the result reached by the court but disagree with its formulations in two specific instances. First, the evidentiary analysis is slightly misdirected and, therefore, confusing. Second, the majority misstates the law of this circuit as established through recent precedent adopted by an en banc panel of the court.

With regard to the first proposition, the majority opines:

> To establish a claim of intentional age discrimination, a plaintiff may present direct evidence of such discrimination or [in the alternative] may prove his claim through circumstantial evidence. See Mayer v. Nextel W. Corp., 318 F.3d 803, 806 (8th Cir. 2003). . . . Where the plaintiff presents only circumstantial evidence of discrimination, as Carraher does in the instant case, we apply the familiar burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green. See 411 U.S. 792, 800-04 (1973).

Ante at 5.

A more accurate statement would be as follows–to establish a claim of intentional age discrimination, a plaintiff may present either "'direct or circumstantial evidence'" of such discrimination. Desert Palace, Inc. v. Costa, 539 U.S. 90, 99 (2003) (quoting U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714 n.3 (1983)). And, where this occurs, "the law makes no distinction between the weight or value to be given either to direct or circumstantial evidence." Id. at 100 (quotation omitted). Lacking evidence "'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action," Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004) (quoting Thomas v. First Nat'l Bank, 111 F.3d 64, 66 (8th Cir. 1997)), the plaintiff may present evidence sufficient to establish a prima face case of discrimination under the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-04 (1973).

Evidence establishing a specific link to alleged discriminatory animus may be totally circumstantial yet wholly sufficient without use of the McDonnell Douglas paradigm. Accordingly, a holding purporting to require the McDonnell Douglas burden-shifting analysis when a plaintiff presents "only circumstantial evidence," is, after Desert Palace, imprecise.

Second, the majority refused to consider one of Carraher's appellate arguments, stating:

> As for Carraher's second explanation [set forth only in his reply brief on appeal], he did not raise it before the district court in his opposition to summary judgment. Accordingly, we will not consider it. See Winthrop Res. Corp. v. Eaton Hydraulics, Inc., 361 F.3d 465, 469 (8th Cir. 2004) ("We review de novo only the evidence and arguments that were before

-11-

the district court when it made its determination in the [summary judgment] order[] challenged on appeal.")

Ante at 7.

The court's Winthrop quotation does not accurately reflect the law of this circuit following United States v. Lucas, No. 05-2165, 2007 WL 2386580 (8th Cir. Aug. 23, 2007) (en banc). In Lucas, eight members of an en banc panel of this court considered, over Lucas's objection, a government argument based on "a diminished expectation of privacy" under the Fourth Amendment. Not only was this particular contention not raised in the district court, it was not even raised before the three-judge panel that first addressed the issues on appeal. Id. at *18. Accordingly, there is no precedential support for the majority's refusal to consider Carraher's "second explanation" in this case.

In Lucas, the en banc majority disregarded numerous circuit holdings that support the proposition stated above by Judge Shepherd. To reach its Lucas conclusion, the en banc court employed wholly inapplicable case law.

The Lucas majority considered the government's newly minted Fourth Amendment theory by claiming to apply the "'well-settled principle' that a district court may be affirmed on any ground supported by the record." Id. at *7 n.5 (citing United States v. Pierson, 219 F.3d 803, 807 (8th Cir. 2000)). Here, on the other hand, as noted above, the panel majority cites Winthrop, as follows – "[w]e review de novo only the evidence and arguments that were before the district court when it made its determination in the [summary judgment] order[] challenged on appeal." Ante at 7. While this panel rejects Carraher's newly stated contention, a majority of the recent en banc panel not only considered the government's late-blooming legal theory in Lucas but actually decided the case by applying the new contention.

I confess that but for the new <u>Lucas</u> precedent, I would agree with Judge Shepherd's statement here. In making this observation, I note that <u>Pierson</u>, a case that I authored, does not even remotely bear the weight placed upon it by the en banc majority in <u>Lucas</u>. <u>Pierson</u>, like <u>Lucas</u>, involved a Fourth Amendment search. In <u>Pierson</u>, the district court refused to suppress the contents of a garment bag because the evidence established that Pierson was not its owner and thus lacked standing to assert a constitutional claim. 219 F.3d at 804-05. Pierson argued that ownership of the bag was not raised in the district court so it should not be considered on appeal. Noting that the issue of Pierson's "standing" had been advanced by the government at all phases of the case, <u>id.</u> at 807 n.9, the panel affirmed the district court, noting, unremarkably, that a court may affirm on any basis supported by the record.

Of course, in <u>Lucas</u> there was no support whatsoever in the record made in the district court or before the three-judge panel for the proposition that the government had advanced a diminished-expectation-of-privacy theory before the filing of its petition for rehearing en banc. In truth, it had not done so. Thus, <u>Pierson</u> is totally distinguishable from <u>Lucas</u>.

I also advance a couple of observations not directly related to this particular case. The new <u>Lucas</u> precedent presents procedural and substantive problems beyond those highlighted in this appeal. Advancing facts or legal theories not manifested in the district court deprives an adverse party of the opportunity to address and make a trial court record concerning disputed contentions. When this occurs, meaningful appellate review is almost impossible. It also severely disadvantages the appellate process because, under <u>Lucas</u>, to avoid the vacation of a three-judge opinion based upon the issues actually raised by the parties, a panel must now apparently recognize and apply, sua sponte, an arguably efficacious, but unasserted, factual or legal theory–even a theory, as raised in <u>Lucas</u>, not supported by controlling precedent. Such a rule undermines the "'evenhandedness and neutrality that are the distinguishing marks of any principled system of justice.'" <u>United States v. Petersen</u>,

276 F.3d 432, 439 (8th Cir. 2002) (quoting <u>Koon v. United States</u>, 518 U.S. 81, 113 (1996)).

      Accordingly, I concur in the result reached by the court.  I dissent from the majority's emanations on the two issues of law outlined above for the reasons stated.

_____